JOHN W. PECK, Senior Circuit Judge.
In 1977 and in 1981, the United States, at the request of the Environmental Protection Agency, filed complaints in the Northern District of Ohio alleging that Jones & Laughlin Steel Corporation (J & L), Jones & Laughlin Industries, Inc., and LTV Corporation were not in compliance with the Clean Water Act, 33 U.S.C. § 1251 et seq., the Clean Air Act, 42 U.S.C. § 7401 et seq., and Ohio’s Implementation Plan adopted pursuant to the Clean Air Act. The 1977 complaint addressed alleged violations in J & L’s Youngstown plant. The 1981 action focused on J & L facilities in Cleveland. Similar Clean Air Act enforcement actions were brought against J & L in the Northern District of Indiana and the Western District of Pennsylvania. The County of Allegheny, Pennsylvania, and the Commonwealth of Pennsylvania intervened in the Pennsylvania action. Both Allegheny and Pennsylvania alleged independent claims under state law.
In the Ohio action filed in January, 1981, the United States and J & L submitted a proposed consent decree providing terms for settlement of the 1977 and 1981 Ohio complaints. Public comment on the proposed decree was invited for a period of thirty days. While the comment period was still pending, the City of Cleveland sought to intervene. The United States agreed, provided the intervention was limited to the City becoming a signatory and reserved the right to object should Cleveland “seek to expand the scope of the issues” before the court.[1] In April, 1981 the district court approved and entered the Consent Decree. The decree required certain monitoring and reporting requirements. J & L agreed to take measures to control emissions of particulate matter as well as wastewater discharge at J & L facilities under schedules set out in the decree. The decree assessed $10 million in civil penalties but the United States and J & L agreed that J & L could mitigate this amount by undertaking specific pollution abatement programs. Failure to comply with scheduled dates for emissions control and wastewater discharge would subject the defendants to stipulated penalties.
In January 1983 the United States filed motions to enforce judgment and motions for contempt against J & L in Ohio, Indiana and Pennsylvania for noncompliance with the consent decrees. Allegheny County and the Commonwealth of Pennsylvania filed motions for contempt against J & L in their respective cases. Cleveland filed no pleadings in the contempt proceedings. J & L subsequently entered settlement negotiations with government officials and representatives from Pennsylvania and Allegheny County. An agreement was reached whereby J & L would pay $3 million to the United States, $500,000 to Pennsylvania, and $500,000 to Allegheny County. J & L also agreed to install additional air pollution control equipment on an expedited schedule.
*350 During the public comment period regarding the proposed Ohio Judgment order, Cleveland filed a request for $500,000. Cleveland asserted that it had a right to a portion of the settlement disbursements because the 1981 consent decree had required Cleveland’s Division of Air Pollution Control to monitor J & L’s compliance as to fifteen different provisions in the decree. Cleveland stated that, through its monitoring, the Division had been responsible for alerting the EPA that J & L had not complied with the 1981 decree.
In December of 1984, after a hearing, the district court rejected the proposed judgment order. Although the court found that the order adequately protected the environment, the court concluded that:
In view of the substantial time and energy expended by the City of Cleveland in monitoring the defendants’ compliance with the 1981 Ohio Consent Decree, as well as the City’s meaningful participation in the negotiation of the proposed Judgment Order, this Court finds that the proposed settlement does not fairly and reasonably protect the interests of all those who will be affected by it.
The court submitted that it would approve the order only if it were amended to provide for a $500,000 payment to Cleveland out of the $4 million stipulated in the proposed judgment or in the alternative, if J & L agreed, to increase the total settlement by $500,000 in order to provide for the payment to Cleveland. The $4 million was placed in an escrow account.
Not surprisingly, the parties did not agree to the court’s modification. J & L did not agree to an increase in the amount of its penalty, and since that time has filed a Chapter 11 petition in bankruptcy court. The government did not consent to allocating part of its settlement monies to Cleveland and appeals the district court’s failure to approve the Consent Decree.
It must first be determined whether this judicial proceeding involving a defendant who has become the debtor in a Chapter 11 bankruptcy should be exempt from the automatic stay provision normally applicable when a petition in bankruptcy is filed. At the time of filing, the bankruptcy court may stay any commencement or continuation of any proceeding to enforce any lien upon the property of a debtor. 11 U.S.C. § 362(a)(1), (2). See Cathey v. Johns-Man-ville Sales Corp., 711 F.2d 60, 61 (6th Cir.1983). A stay is to ensure that the assets of a debtor are not reduced or disturbed and to protect the bankruptcy court’s exclusive jurisdiction over the debt- or and his property. Atlantic Richfield Co. v. Good Hope Refineries, Inc., 604 F.2d 865, 868-69 (5th Cir.1979). An exception to the automatic stay rule is found when the government is seeking to enforce its police or regulatory power. 11 U.S.C. § 362(b)(4). The Bankruptcy Code, however, limits this exception by stating that the enforcement of a money judgment is subject to a stay. 11 U.S.C. § 362(b)(5).
If this proceeding is to carry out the government’s police or regulatory power then there should be no stay. The legislative history to § 362(b)(4) states that: “where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.” H.R.Rep. No. 598, 95th Cong., 1st Sess. 343, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6299 (emphasis added). If on the other hand, this proceeding concerns the enforcement or collection of a money judgment then the filing of the Chapter 11 petition should operate to stay this proceeding and the penalty monies would be subject to the bankruptcy court. The legislative history to § 362(b)(5) states that “the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.” S.Rep. No. 989, 95th Cong., *351 2d Sess. 52, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5838.
It is our view that this appeal is a further step in the environmental regulation of J & L activities. The issue at hand is whether Cleveland is entitled to any portion of a civil penalty that otherwise would go to the United States Treasury. The resolution of this question will neither increase nor decrease J & L’s assets nor affect its other creditors; it will merely determine the appropriate recipients of a civil penalty held in escrow and designated as belonging to the United States. The determination of proper parties to this settlement agreement arising from a violation of the Clean Air Act is based on the policies and procedures set out in environmental pollution legislation. This proceeding therefore falls under the rubric of the governmental regulatory power exception to the automatic stay in bankruptcy. 11 U.S.C. § 362(b)(4).
Jurisdiction is also proper in the present case under 28 U.S.C. § 1292(a)(1) which permits appeals as of right from “[interlocutory orders of the district courts ... granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions____” Although the district court’s order conditioning entry of the proposed consent decree on a particular modification did not “refuse an injunction,” it nonetheless had the practical effect of doing exactly thal. The district court conditioned its approval of the consent decrees on J & L and the government agreeing to allow the City of Cleveland to receive a portion of the settlement monies. Since the government and J & L would not voluntarily agree to such a modification, the judge’s refusal to enter the decree would in effect force the parties to abandon their negotiated settlement and proceed to trial.
According to Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), for an interlocutory order to be immediately appealable under § 1292(a)(1) a petitioner must also show that the interlocutory order “might have a ‘serious, perhaps irreparable, consequence’ and that the order can be ‘effectively challenged’ only by immediate appeal.” Id. at 84, 101 S.Ct. at 996 (quoting Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)). In the present case, as in Carson, supra, at 86-89, 101 S.Ct. at 999, the parties to the consent decree would lose the opportunity to settle their case on the compromised terms if modification were required by the court, and would have to proceed to trial and into protracted litigation. It is appropriate, therefore, that this order be immediately appealable under § 1292(a)(1).
Turning to the merits of the case, this appeal presents the issue of whether the district court abused its discretion in conditioning its approval of the consent decree upon amendment of the decree to allow a third party, who had not asserted an independent claim, to receive part of the settlement monies.
A trial court may review a consent decree to assure that it is fair, adequate, and reasonable, as well as consistent with the public interest. See, e.g., Williams v. Vukovich, 720 F.2d 909, 921, 923 (6th Cir. 1983). In the instant case, the trial judge found that the proposed settlement would satisfy the criterion of being in the public interest but would not serve as being fair to one of the parties involved, namely the City of Cleveland.
The City of Cleveland, however, has offered no legal basis upon which to base its demand. Cleveland has no claim for damages against J & L under the Clean Air Act. The Clean Air Act prohibits such an award. The Act provides only for injunctive relief and civil penalties under 42 U.S.C. § 7413(b) and for injunctive relief under 42 U.S.C. § 7603. Cleveland has also asserted no other independent state or federal claim. Cleveland claims entitlement to $500,000 of the civil penalty be *352 cause of the city’s “effort to help negotiate this consent agreement” and “[b]ecause the quality of life in Cleveland had been adversely affected____” Cleveland, however, has filed no formal claim or contempt motion setting forth a legal basis for the award it has sought. Cleveland could have pursued an independent claim under state law as was done by Pennsylvania and Allegheny County. Ohio law similarly provides that the State’s Attorney General can bring an action for injunctive relief and/or civil penalties for Clean Air Act violations. See Ohio Rev.Code § 3704.06(A), (B). Violators may be fined for violations of Ohio’s air pollution control measures. Ohio Rev.Code §§ 3704.99, 3704.05(AHH). Cleveland did not avail itself of this opportunity.
Cleveland sought to intervene as a party only after the consent decree was drafted and negotiated by the United States and J & L. Significantly the government specifically reserved the right to object should Cleveland “seek to expand the scope of issues now before this court ... [or should Cleveland seek to require the United States] to exercise discretion in a manner not deemed appropriate by plaintiff with respect to enforcement of environmental laws or the conduct of this litigation.” At no time did the district court appoint the City of Cleveland as a monitor, nor did the court or anyone else ask the city for assistance in enforcing the 1981 decree. The City of Cleveland is demanding that the government pay a fee for services voluntarily performed by the city, services that were helpful in facilitating J & L's compliance with provisions in the consent decree but nonetheless voluntarily offered and performed.
Cleveland lastly claims that it should receive part of the settlement payment because an Environmental Protection Agency employee represented that the decree would be modified to earmark $500,000 for the City of Cleveland. The Justice Department overruled EPA’s recommendation for the payment to Cleveland.
An EPA representative is not an authorized agent of the Justice Department and does not have the power to compromise litigation involving the United States. See United States v. Newport News Shipbuilding & Dry Dock Co., 571 F.2d 1283, 1287 (4th Cir.), cert. denied, 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978); In re Subpoena of Pérsico, 522 F.2d 41, 54-55 (2nd Cir.1975). The United States is not bound by unauthorized acts of its agents. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).
The judgment of the district court is reversed and the case is remanded with instructions to enter the agreed judgment order here and above referred to.

. In March 1981 the Neighborhood Environmental Coalition also filed a Motion to Intervene. A limited intervention status was granted by the district court so that the Coalition had an opportunity to submit its comments and objections concerning the consent decree. The court also recognized the need for the Coalition to be informed regarding these matters.