UNITED STATES of America, Plaintiff–Appellant,

v.

WINCHESTER MUNICIPAL UTILITIES, Defendant–Appellee,

The Commonwealth of Kentucky, Defendant.

No. 90–6085.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 1, 1991.

Decided Sept. 19, 1991.

---

**4.** The majority does not even cite to, let alone distinguish, *Domani.*

Louis DeFalaise, U.S. Atty., Lexington, Ky., Andrew C. Mergen (argued and briefed), Phillip A. Brooks, U.S. Dept. of Justice, Land & Natural Resources Div., Richard B. Stewart, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., for the U.S.

Stephen R. Mysliwiec (argued and briefed), Piper & Marbury, Washington, D.C., Edsel T. Jones, Winchester, Ky., for Winchester Mun. Utilities.

Before NELSON and SUHRHEINRICH, Circuit Judges, and HOLSCHUH, Chief District Judge.*

PER CURIAM.

The issue presented in this appeal is whether the district court abused its discretion in ordering the United States to pay substantial attorney fees to a municipal utility found to have been violating the environmental protection laws. The district court awarded the fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, and drew additional support for the award from Rule 11, Fed.R.Civ.P., and 28 U.S.C. § 1927. The court held,

---

* The Honorable John D. Holschuh, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

among other things, that the utility had prevailed in the litigation against it and that the government's insistence that the utility pay a civil penalty was not substantially justified. We disagree, and we shall reverse the fee award.

## I

Defendant Winchester Municipal Utilities operates a wastewater treatment plant in Winchester, Kentucky. Alleging that the plant was being operated in violation of the terms of a permit issued by the U.S. Environmental Protection Agency, the United States sued Winchester in 1984 pursuant to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* The complaint asked for civil penalties and injunctive relief.

The district court entered summary judgment in favor of the United States on the liability issue, noting that the case would proceed to trial "on the question of remedies, and more particularly whether or not a civil penalty would be an appropriate remedy." The utility did not contest the summary judgment motion.

Before the summary judgment was entered, the utility sought a protective order limiting discovery on the civil penalty issue. The utility argued, in this connection, that (1) the government was not entitled to any such penalties, and (2) the government had stated in a status report that "it appears that the sole question in this action is the nature of repairs, alterations, or modifications to ... [the] wastewater treatment plant."

The district court granted the protective order, and the United States moved for reconsideration. In its motion the United States cited 33 U.S.C. § 1319(d) and *Stoddard v. Western Carolina Regional Sewer Authority,* 784 F.2d 1200 (4th Cir.1986), as indicating that it would be error not to award any penalties. (Section 1319(d) says that any person who violates specified sections of the Act "shall" be subject to a civil penalty; the *Stoddard* court held that this language "mandated" a penalty in some form.) The United States disclosed that it had offered to settle for $40,000 in civil

penalties, notwithstanding that the statutory maximum was on the order of $50,-000,000. The utility subsequently filed a pretrial memorandum in which it acknowledged the government's $40,000 proposal and argued that neither 33 U.S.C. § 1319(d) nor *Stoddard* supported the government's contention that civil penalties were mandatory.

On May 30, 1986, two days after summary judgment was entered, the parties filed a stipulation of facts in which it was agreed that the utility's failure to comply with federal standards did not result from willful misconduct on the part of the utility. In May of 1988, almost two years later, the district court approved a consent decree in which, among other things, the utility agreed to pay a $10,000 civil penalty. (The government had reduced its penalty proposal from $40,000 to $10,000 in May of 1986; it is most unlikely that the government's insistence on this relatively small penalty contributed in any major degree to the delay in negotiating a settlement.) The utility also undertook to make costly modifications to its treatment facility. The consent decree—which recited that "[t]he failure of Winchester's wastewater treatment system to meet effluent limitations has not been attributed to negligence on the part of Winchester"—contained a provision permitting the utility to apply for an award of attorney fees.

The utility made such an application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. In the alternative, the utility sought fees under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. The district court granted the request, awarding fees in the amount of $199,158.73 plus interest. This appeal followed.

## II

The relevant portion of the EAJA provides as follows:

"Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action

... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

Pretermitting the question of who the "prevailing party" was, we turn first to the district court's finding that the pursuit of civil penalties by the United States was not "substantially justified." We review such findings under an abuse of discretion standard. *Pierce v. Underwood*, 487 U.S. 552, 562, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988). An abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989).

The Supreme Court has defined a "substantially justified" position as one that has a "reasonable basis in both law and fact." *Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550. In the case at bar the district court reasoned that the government's pursuit of civil penalties was not substantially justified because

> "EPA policy recognizes that civil penalties are not appropriate in the unusual situation where the violator is not negligent. *Environmental Protection Agency Civil Penalty Policy* (February 16, 1984) at 24. The purposes of deterrence and punishment are not fulfilled by making an innocent violator pay civil penalties or incur additional attorneys' fees. When the government became aware of the fact that third parties were responsible for [the utility's] violations of effluent limitations, the government should have swiftly proceeded to resolve this matter through agreement on injunctive relief and future compliance with the statute."

◼ As the district court recognized, however, the Federal Water Pollution Control Act is a strict liability statute. *Stoddard*, 784 F.2d at 1208 (citing *United States v. Earth Sciences, Inc.*, 599 F.2d 368 (10th Cir.1979)). The fact that the utility's violations of the Act were neither willful nor negligent is not dispositive of the question whether civil penalties are appropriate.[1]

◼ Nothing in the EPA policy cited by the district court compels a different conclusion. In relevant part, that policy reads as follows:

> "Although most of the statutes which the EPA administers are strict liability, this does not render the violator's willfulness and/or negligence irrelevant. Knowing or willful violations can give rise to criminal liability, and the lack of any culpability may, depending upon the particular program, indicate that no penalty action is appropriate. Between these two extremes, the willfulness and/or negligence of the violator should be reflected in the amount of the penalty." *Environmental Protection Agency Civil Penalty Policy* (February 16, 1984) at 24.

Although the policy indicates that a violator's lack of culpability may justify a decision not to seek a penalty, it does not mandate such a decision. And the district court's conclusion that the government was not justified in seeking any civil penalty in this case is difficult to square with the court's earlier approval of a consent decree that obligated the defendant utility to pay a penalty of $10,000.

◼ Neither do we find anything inappropriate about the size of the penalty that was sought. Although the government suggested to the district court that the utility bore the burden of proving that it should not pay the statutory maximum, we agree with the district court's conclusion that the relevant figure, in the present context, was the government's initial settlement proposal of $40,000. This proposal was not inherently unreasonable, especially in light of the utility's admission that it had consistently failed to meet federal stan-

---

**1.** Section 1319(d) was amended in 1987 to require consideration of factors such as the violator's good faith efforts to comply and the economic impact of civil penalties, but these factors are relevant only insofar as they affect the amount of penalty to be assessed. 33 U.S.C. § 1319(d) (1987).

dards ever since it began operation years earlier.

The utility has cited no case indicating that the proposal was unreasonable. In a pre-trial memorandum filed on May 28, 1986, the utility did, to be sure, cite four district court cases in which the courts had supposedly declined to impose civil penalties against municipal utilities.[2] But none of these cases so much as hints that the government's pursuit of a civil penalty was unreasonable or that the amount sought was excessive. A supplemental trial memorandum filed by the government, on the other hand, cited twenty-eight instances in which government enforcement actions had resulted in municipalities paying civil penalties ranging from $8,500 to $625,000.

█ The fact that the government argued that the imposition of civil penalties was mandatory did not render its pursuit of such penalties unreasonable. The utility correctly notes that the EPA's *Civil Penalty Policy* gives EPA officials discretion not to seek civil penalties. This is not inconsistent with the government's assertion that civil penalties are mandatory, under 33 U.S.C. § 1319(d), where court proceedings have been instituted. As the utility argued in its pre-trial memorandum of May 28, 1986, moreover, the *Civil Penalty Policy* is not binding on the EPA and does not purport to interpret the Federal Water Pollution Control Act.[3]

The government's assertion that civil penalties are mandatory was primarily based on the language of 33 U.S.C. § 1319(d) and the decision in *Stoddard v. Western Carolina Regional Sewer Authority*, 784 F.2d 1200, 1208 (4th Cir.1986).

The relevant language of § 1319(d) reads as follows:

"Any person who violates section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title, or any permit condition or limitation implementing any such sections ... shall be such subject to a civil penalty not to exceed $10,000 per day of such violation.[4]" 33 U.S.C. § 1319(d) (1984).

In *Stoddard* the Fourth Circuit stated:

"Section 309(d) ... states, 'any person who violates ... any permit condition or limitation ... *shall be subject to a civil penalty* not to exceed $10,000 per day of such violation.' This language leaves little doubt that, under the circumstances of this case, a penalty in some form is mandated. Liability under the [Federal Water Pollution Control] Act is a form of strict liability. Clearly a fine must be imposed when the violations have been as pervasive as those perpetrated by the Sewer Authority.... We hold that the district court committed an error of law by failing to assess civil penalties in some amount. The amount of the penalty to be levied is, of course, discretionary with the court." *Stoddard*, 784 F.2d at 1208 (emphasis in original; citations omitted).

The utility argued that the words "shall be subject to" do not indicate that civil penalties are mandatory, and it argued that the *Stoddard* decision should be limited to its facts. In addition to citing a number of cases in which district courts indicated that they had discretion not to impose a penalty, the utility also relied on *State Water Control Board v. Train*, 559 F.2d 921, 927 (4th Cir.1977), which held that

$2,500 for each day in which the defendant failed to comply with federal standards.

**2.** The cases are *United States v. Detroit*, 476 F.Supp. 512 (E.D.Mich.1979), *subsequent orders modified*, 720 F.2d 443 (6th Cir.1983); *Michigan v. City of Allen Park*, 501 F.Supp. 1007 (E.D.Mich.1980), *aff'd without opinion*, 667 F.2d 1028 (6th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982), *subsequent proceeding*, 573 F.Supp. 1481 (E.D.Mich. 1983); *Pymatuning Water Shed Citizens for a Hygienic Environment v. Eaton*, 506 F.Supp. 902 (W.D.Pa.1980), *aff'd*, 644 F.2d 995 (3d Cir.1981); *United States v. Providence*, 492 F.Supp. 602 (D.R.I.1980). In the *Providence* case there was a consent decree imposing a civil penalty of

**3.** On February 11, 1986, the EPA issued a civil penalty policy specifically designed for Federal Water Pollution Control Act enforcement cases. The 1986 policy, which states that "[t]he Agency will vigorously pursue penalty assessments in judicial actions," applies only to actions commenced after February 11, 1986.

**4.** In 1987, the maximum daily civil penalty was increased to $25,000. 33 U.S.C. § 1319(d) (1987).

"in cases where enforcement proceedings are brought ... the courts retain equitable discretion to determine whether and to what extent fines and injunctive sanctions should be imposed for violations brought about by good faith *inability* to comply with the deadline." (Emphasis added.)

The utility's reliance on *Train* is misplaced. As originally drafted, the Federal Water Pollution Control Act established a July 1, 1977, deadline for compliance with some of its requirements. *Id.* at 925. In order to help states and municipalities meet this deadline, Congress appropriated billions of dollars for the construction of wastewater treatment plants. *Id.* at 923. Money from Washington was slow in coming, however, and many states and municipalities found themselves unable to comply. *Id.* at 924. The plaintiff in *Train* sought a ruling that a municipality not receiving timely federal assistance should be exempt from the July 1, 1977, deadline. The Fourth Circuit held that Congress intended the deadline to be rigid and refused to create a "blanket exemption" for municipalities not receiving timely federal assistance. *Id.* at 926 and 927 n. 35. It was within this context that *Train* stated that courts had the discretion not to impose fines on municipalities whose violations were brought about by a "good faith inability to comply with the deadline." *Id.* at 927. In the case at bar, the utility does not contend that it was unable to comply with any relevant deadline. It is undisputed, moreover, that the utility received approximately $5.6 million in federal funds in order to construct its wastewater treatment plant.

It is true that a number of district courts have stated that whether to impose a civil penalty is discretionary. We ourselves are inclined to believe that these district courts have interpreted § 1319(d) correctly, but we think the government was substantially justified in arguing that the statute makes the imposition of civil penalties mandatory once a defendant has been haled into court. The use of the word "shall" in § 1319(d) could prompt a reasonable official to take this view, and the *Stoddard* decision could reasonably be interpreted as supporting it. A panel of the Court of Appeals for the Eleventh Circuit has recently interpreted both § 1319(d) and *Stoddard* in precisely the same way as the government. See *Atlantic States Legal Foundation v. Tyson Foods, Inc.*, 897 F.2d 1128 (11th Cir. 1990), where the court heard a challenge to a district court's conclusion that "[i]t would simply be inequitable and unconscionable to impose civil penalties against Tyson when it has displayed the utmost good faith." *Id.* at 1141. Relying on § 1319(d) and *Stoddard*, the Eleventh Circuit held that

"once a violation has been established, some form of penalty is required. * * * While the amount of penalty to be levied is discretionary with the district court, its determination, based solely on the good faith efforts of Tyson to comply with the law, that no penalty was appropriate was and would be an abuse of discretion." *Id.* at 1142.

The EAJA states that attorney fees are not to be awarded against the government when its position is substantially justified or when "special circumstances make an award unjust." As the Court of Appeals for the Eighth Circuit has noted,

"[t]he special circumstances exception helps to ensure that the government can advance in good faith novel but credible interpretations of the law." *Jackson v. Bowen*, 807 F.2d 127, 128 n. 3 (8th Cir. 1986).

If the government had been arguing for mandatory civil penalties before the panel that decided *Tyson*, its argument would have carried the day. Whether or not the *Tyson* holding is correct is not significant. What is significant is that a United States Court of Appeals accepted an argument identical to the one the government had been making here several years earlier. We are not prepared to say that a considered legal interpretation adopted by one of our sister circuits is so far beyond the pale that it cannot even be considered "substantially justified."

The reasonableness of the government's position also protects it from liability under

Fed.R.Civ.P. 11. With regard to 28 U.S.C. § 1927, the utility argues that the United States has waived any challenge to the district court's award of attorney fees by failing to raise it below. Even though the government's response to the utility's application for fees did not mention § 1927, its arguments against the award of attorney's fees under the EAJA were and are directly relevant to the question of liability under § 1927.

The order appealed from is REVERSED, and the case is REMANDED with instructions to rescind the award of attorney fees.