**Antoinette Bozievich BUXTON,**
**Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
**Appellee.**

**Civil Action No. 95–1301(RCL).**

United States District Court,
District of Columbia.

April 10, 1997.

Carole C. Perez, Richard S. O'Connor, Rockville, MD, for Appellant.

Lois J. Schiffer Assistant Attorney General, Environment & Natural Resources Div., Daniel M. Flores, Bret R. Williams, Environmental Defense Section, U.S. Dept. of Justice, Washington, DC, for Appellee.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This case comes before the court on appeal from a ruling made by a Regional Administrator of the Environmental Protection Agency ("EPA"), assessing a fine of $5,000 against appellant Antoinette Bozievich Buxton for violations of the Federal Water Pollution Prevention and Control Act (the Clean Water Act, hereinafter "CWA"). 33 U.S.C. §§ 1251–1387 (1992). The court has jurisdiction to decide this issue pursuant to section 309(g)(8) of the CWA.

For the following reasons, the decision of the EPA Administrator is affirmed, and appellant is hereby ordered to comply with the Administrator's penalty assessment.

### I. FACTS

#### A. Chompist Farm

Appellant purchased the expanse known as Chompist Farm in April of 1989 with the intention of converting the property into a horse farm. Shortly thereafter, she began the conversion process. Among the lands of Chompist Farm are approximately three acres of wetlands lying in a natural swale.[1] The wetlands are surrounded on the south

---

1. A swale is a small meadow or swamp, usually comprised of marshy land thick with vegetation.

and east by pastures that slope into the swale, and on the north by a barn and house. The swale itself slopes to the west, crossing a dirt access road that runs in a north to south direction.

In order to realize the conversion to a horse farm, appellant had to remove vegetation that existed in and around the wetland swale. To accomplish this task, appellant hired Mr. George Phillips in the summer of 1990. During the course of his labor, Phillips discharged fill material into the Chompist Farm wetlands. This material included upland and wetland soils, drain tiles, dredged material from the wetland itself, and gravel beds. Filling such a wetland requires by law a permit. Neither appellant nor Phillips had a permit to fill.

On September 28, 1990, acting upon a tip, Mr. Frank Plewa of the United States Army Corps of Engineers ("Corps") paid a visit to Chompist Farm to investigate potential CWA violations. Upon completion of his investigation, Plewa disclosed to one of Phillips' employees that he suspected CWA violations had been caused by the filling of the wetlands.

On October 1, 1990, Plewa advised appellant Buxton to refrain from working in the potentially harmed area until further analysis could be completed. On October 19, Plewa returned to Chompist Farm and found that the discharged fill materials had in fact violated the CWA. Three days later, the Corps sent letters to both appellant and Phillips, advising them that their permitless discharges into the swale were likely violations of § 404 of the CWA.

On January 10, 1991, given a choice between applying for an "after the fact" permit or restoring the wetlands, appellant chose the restoration alternative. Plewa agreed to and in fact proceeded to flag off the affected areas at issue. On April 29, 1991, appellant wrote to Plewa and informed him that the restoration project was complete.

Such was not the case. While the area west of the access road had been satisfactorily restored, appellant had failed to remove fill in a portion (approximately .89 of an acre) of the remaining wetland. On May 13, 1991,

appellant spoke with Plewa and agreed to complete the remaining restoration process. Some six months later, Plewa visited the polluted wetland and discovered that appellant still had not removed the fill as promised. After numerous attempts at communication failed, the Corps referred the case to the EPA.

### B. The Administrative Enforcement

On June 24, 1992, the EPA issued an administrative order against appellant under § 309(a) of the CWA, demanding that she complete restoration of the swale within thirty days. On April 16, 1992, appellant informed the EPA that permission for Phillips to complete the process would be given. In August of 1992, after several attempts to reach appellant by phone proved to be unsuccessful, the EPA sent a letter to appellant requesting an update. Appellant did not respond. More attempts at communication by the EPA failed.

After confirming that the restoration process had not yet been completed, the EPA filed an administrative complaint pursuant to § 309(g)(2) of the CWA on November 15, 1993. The complaint sought penalties for the alleged CWA violations. On December 16, 1993, appellant requested a hearing. Said hearing was conducted on October 12 and November 10 of 1994 before Regional Judicial Officer Benjamin Kalkstein. Thereafter, Kalkstein recommended that appellant be found guilty of wetlands violations, and further suggested that a Class I civil penalty of $5,000 be imposed. The maximum fine Kalkstein could have recommended be imposed for such a Class I violation was $25,000. Kalkstein submitted his recommendation to the EPA's Regional Administrator for adoption or rejection on June 8, 1995.

On June 13, 1995, the Regional Administrator adopted Kalkstein's recommendation of both the violation and the penalty assessment. Prior to reaching his conclusion, the Regional Administrator applied the nine factors found in § 309(g)(3) of the CWA to the facts at issue. The Regional Administrator concluded that the application of the statutory factors to the case at bar required him to assess a $5,000 penalty against the appellant.

Appellant filed a timely appeal to this court under 33 U.S.C. § 1319(g)(8)(A), seeking review of the Regional Administrator's determination. For the following reasons, this court AFFIRMS the conclusion reached by the EPA Regional Administrator, and orders compliance with the penalty assessment.

## II. ANALYSIS

### A. Standard of Review

According to section 309(g)(8) of the CWA, the decision of the Regional Administrator is not to be set aside unless the "assessment of the penalty constitutes an abuse of discretion." 33 U.S.C. § 1319(g)(8) (1992). Although case law has not specifically defined this statute's standard, it should be read consistent with the interpretation of the abuse of discretion standard described in the Administrative Procedure Act. Accordingly, this court is to "consider whether the decision was based on a consideration of all the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (quoting *Bowman Trans., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974)). This standard is "narrow", and courts are advised not to insert their judgments for those of the agencies. *State Farm*, 463 U.S. at 43, 103 S.Ct. at 2866. Absent a clear error of judgment, the opinion of the Regional Administrator must be upheld.

### B. Section 309(a)(3) of the CWA

Section 309(g)(2)(A) of the CWA lists nine factors the Regional Administrator is to consider in determining the reasonableness of the recommended penalty. 33 U.S.C. § 1319(g)(3) (1992). The first four factors to be weighed involve the violation itself: the nature, circumstances, extent and gravity of the CWA violation. *Id.* The next four factors involve the circumstances surrounding the violator's illegal acts: his or her ability to pay, any prior history of CWA violations, the degree of culpability, and the economic benefit derived from the CWA violation. *Id.* Lastly, the Regional Administrator is invested with the power to consider "such other matters as justice may require." *Id.*

The Regional Administrator specifically applied these nine factors to the case at hand and determined that a $5,000 penalty was appropriate.[2] All these considerations were rationally balanced by the Administrator before any conclusions were generated.[3] None went unaccounted for in his opinion. Based upon an analysis of the facts, it cannot be said that the Administrator's determination was in any way a "clear error of judgment" sufficient to support an abuse of discretion finding.

■ Appellant offers various unpersuasive arguments to the contrary. She first contends that the Administrative Law Judge and Regional Administrator failed to adequately consider the extensive restoration efforts completed by the appellant. Appellant relies on two federal district court cases to bolster her claim. Such dependence is not sufficient to sway this court. Completion of restoration by a CWA violator does not equate to the dismissal of an administrative penalty. EPA fines exist to deter such CWA violations from occurring in the first place. Choosing to waive any penalty simply because the property is eventually restored would not serve to meet this end. In addition, in the case at bar, a portion of the abused wetland was still illegally filled nearly four years after the initial discovery of the CWA violation. Along the way, appellant failed to comply with an EPA enforcement order demanding prompt restoration. She repeatedly failed to

---

2. Again, the maximum fine the Regional Administrator could have imposed for the Class I violation at issue was $25,000. 33 U.S.C. § 1319(g)(2)(A) (1992).

3. Most important was the determination that unpermitted discharges such as the one at issue were serious violations of the CWA. Dec. at 18. In addition, the Administrator was disturbed by the length of time (nearly four years) between the initial discovery of the CWA's violation and the wetland's eventual restoration. *Id.* at 7, 13. In finding no just basis for the delay, the Administrator held that appellant was responsible at all times for the restoration of the filled wetlands. *Id.* at 21.

respond to EPA letters or attempts at communication. As such, she cannot now come before this court and claim that her delayed restoration, agreed to in January of 1991 and completed years later, should translate into a waiver of penalty. It is clearly not an abuse of discretion to conclude that economic sanctions were warranted.

Appellant also contends that the Administrative Law Judge and Regional Administrator failed to adequately consider the conflicting government orders received by her. Thus, appellant asserts that the government, and not her, was mostly responsible for the delay in the wetlands' restoration. Appellant overlooks the fact that the Regional Administrator did in fact weigh this element in his final determination: "[t]here were, indeed, several gaps in the restoration effort, and each gap necessitated additional expenditures on [appellant's] part to have Mr. Phillips ... return to the Farm for more work. Communication lapses occurred, restoration directions were misunderstood, and of course weather often interfered." Dec. at 21. The Administrator went on to add, however, that appellant "failed to recognize that the burden of moving forward to restore the wetlands was at all times on her, and not on the Corps. There is no basis for the position that she was entitled to wait for 'clear, concise, and definitive' direction from the Corps, as the record shows she did." *Id.*

■ It appears obvious that the EPA Administrator adequately considered the conflicting governmental orders prior to arriving at the penalty determination. The miscommunication between the parties was accounted for and placed alongside the other facts of the case. The Administrator correctly concluded that the onus to restore the wetlands was on the appellant, not the Corps. Taken in conjunction with the other facts of the case, it was therefore not an abuse of discretion to decide that an administrative penalty was in order.

■ Appellant also seeks to rely on a permit received from the York (Pa.) County Conservation District. Since this "government" permit had cleared her to replace the drain tiles, she posits, the conflicting EPA determination of a CWA violation was an abuse of discretion. This argument is incorrect. The permit appellant refers to allowed her to replace the existing drain tiles. It in no way even hinted that it was legal to breach the CWA by dumping the discarded drain tiles into a protected wetland, the violation appellant actually committed. As such, there is no conflict amongst the permit issued and the subsequent acts of the EPA.

Appellant next contends that the Administrator ignored evidence that conclusively showed *none* of the statutory factors listed in section 309(g) of the CWA point to a monetary penalty. The Regional Administrator first determined that a CWA violation had occurred. Wetland vegetation had been cleared and excavated, and gravel and upland soil had been dumped illegally into the protected area. He determined that CWA violations such as this are considered "very serious."

■ Appellant asserts that the "run-of-the mill" nature of the act lessens its seriousness. In addition, the relatively small area of unrestored land (.89 acres) allegedly further diminishes appellant's culpability. In fact, the opposite of these two deductions is true: the accumulation of similar CWA violations, taken as a whole, point to a serious environmental problem in need of attention. The EPA sought to combat this environmental hazard by enforcing that which Congress plainly authorized it to do under the statute: protect the wetlands from illegal filling. The mere fact that the offense is common does not mean it is not punishable. Surely a monetary penalty designed to deter similar violations in the future is not an abuse of discretion.

■ The Regional Administrator also concluded that the "as justice may require" factor warranted consideration of the nearly four year delay in the wetland's restoration. The delay was found to be "lengthy" and "unwarranted", and as such virtually offset the fact that appellant had restored the wetlands at all. As mentioned, the Regional Administrator took note of the communication lapses and misunderstandings between appellant and the Corps. Nonetheless, he found the restoration delay to be unreasonable. Coupled with the other statutory fac-

tors weighing against the appellant, justice required the imposition of an economic sanction.

█ It is true that appellant had no prior history of CWA violations, had a low degree of culpability in the commitment of the illegal act,[4] and derived no economic benefit from the filling of the protected wetland. The Regional Administrator acknowledged all these factors in his opinion. He balanced all of these statutory considerations with the others mentioned in arriving at his conclusion. Taken as a whole, he determined that a monetary penalty was in order. Violations of a serious nature occurred. The appellant unnecessarily allowed the wetland to remain filled in direct violation of an EPA enforcement order for several years. Such considerations were weighed against the statutory factors serving to exculpate the appellant. The EPA official determined that a fine, one-fifth of that which he was authorized to impose, was in order. In no way can such a decision be considered a clear error of judgment or abuse of discretion.

### CONCLUSION

Accordingly, the decision of the Regional Administrator of the EPA is hereby AFFIRMED. Appellant is hereby ordered to satisfy the $5,000 penalty as validly determined in the proceedings below.

SO ORDERED.

---

4. Appellant notes the fact that Phillips, and not herself, was the one who actually illegally filled the wetlands. It is undisputed that Appellant owned the land in question. She hired Phillips to convert the landscape of Chompist Farm into an area suitable for a horse farm. Phillips was therefore an agent of the appellant. As an agent, acts undertaken in the ordinary course of business are attributable to the principal. The illegal filling of the wetlands by agent Phillips was an act undertaken in the ordinary course of business, and is therefore attributable to the principal, appellant Buxton.

Regardless, the CWA is a strict liability statute. *See, e.g., United States v. Winchester Municipal Utilities,* 944 F.2d 301, 304 (6th Cir.1991); *Hawaii's Thousand Friends v. City and County of Honolulu,* 821 F.Supp. 1368, 1392 (D.Haw. 1993); *United States v. Ohio Edison Co.,* 725 F.Supp. 928, 934 (N.D.Ohio 1989). The statute does not require fault as a prerequisite to assessing a monetary penalty. *Hawaii's Thousand Friends,* 821 F.Supp. at 1392 (stating "[t]he fact that a violator is 'without fault' in committing violations of the [CWA] does not absolve the violator from penalties."); *Ohio Edison,* 725 F.Supp. at 934 (holding "the statute does not require fault to support a penalty"). Fault can be considered, along with the other statutory factors, only in arriving at the actual penalty amount. *Ohio Edison,* 725 F.Supp. at 934. It is clear from the record that the Administrator considered appellant's low degree of culpability in conjunction with the other statutory factors in arriving at his penalty determination. Based on the record, such a determination was clearly not an abuse of discretion.