*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellant,*

FAYETTE COUNTY NEIGHBORHOOD COUNCIL;
WALTER E. GAFFIELD; JOHN TUCKER; MARK
W. LOWRY; STANLEY WILLIAMS; JENA
KEMPLIN; ARTHUR BRYSON; KATHLEEN C.
BRYSON; WILLIAM REYNOLDS; BARBARA
REYNOLDS; JIM LaVORGNA; CHERYL
LaVORGNA; ROBERT SCOTT; CELESTE SCOTT
et al.,

                    *Intervenors-Appellees,*

COMMONWEALTH OF KENTUCKY,

                    *Plaintiff,*

     *v.*

LEXINGTON-FAYETTE URBAN COUNTY
GOVERNMENT,

                    *Defendant-Appellee.*

No. 08-6296

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 06-00386—Karl S. Forester, District Judge.

Argued: December 3, 2009

Decided and Filed: January 7, 2010

Before: SILER, GILMAN, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael T. Gray, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellant. Scott White, MORGAN & POTTINGER, P.S.C.,
Lexington, Kentucky, for Appellees. **ON BRIEF:** Michael T. Gray, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Scott White, MORGAN
& POTTINGER, P.S.C., Lexington, Kentucky, John C. Bender, Kelly D. Bartley,
GREENEBAUM DOLL & McDONALD PLLC, Lexington, Kentucky, for Appellees.

ROGERS, J., delivered the opinion of the court, in which SILER, J., joined. GILMAN, J. (p. 11), delivered a separate opinion concurring with the lead opinion's analysis.

————————————

**OPINION**

————————————

ROGERS, Circuit Judge.    The district court in this case refused to approve a proposed settlement of a Clean Water Act suit brought by the United States and the Commonwealth of Kentucky against the Lexington-Fayette Urban County Government. The sticking point was a proposed civil penalty of $425,000 that the district court found could be better directed toward alleviating the conditions that violated the Clean Water Act. Such a concern by itself cannot support rejection of an otherwise proper settlement, in light of the express provision for civil penalties in the Clean Water Act. Remand is therefore required.

The United States, subsequently joined by the Commonwealth of Kentucky, brought this Clean Water Act civil enforcement action against the Urban County Government (hereinafter "Lexington") pursuant to 33 U.S.C. § 1319. The United States and the Commonwealth advanced five claims for relief based on Lexington's operation of both a sanitary sewer system and a separate storm sewer system in ways that allegedly violate Lexington's permits and the Clean Water Act.

The Fayette County Neighborhood Council and twenty-nine individuals, referred to collectively as "the Citizens," intervened as plaintiffs. The Citizens alleged that, since 1998, the Fayette County Neighborhood Council had tried to work with Lexington, without success, to resolve Lexington's Clean Water Act violations. The Citizens further allege that on September 26, 2006, and again on October 4, 2006, they had served Lexington and the appropriate federal and Commonwealth authorities with formal notice of their intent to bring a Clean Water Act enforcement action against Lexington within the next sixty days. After the Citizens gave notice of their intent to sue, the Fayette County Neighborhood Council apparently participated in negotiations with Lexington, the United States, and the Commonwealth in an effort to resolve Lexington's alleged Clean Water Act violations. But the Council's involvement in the negotiations ended on May 4, 2007, and the Citizens moved to intervene as plaintiffs shortly thereafter. The Citizens' intervening complaint seeks not

only injunctive relief, but also civil penalties in an amount "commensurate with the duration and magnitude of the [Clean Water Act] violations, taking into consideration the lack of progress that [Lexington] has made until this enforcement action was initiated." The district court granted the Citizens' motion to intervene.

The United States, the Commonwealth, and Lexington ultimately reached a settlement agreement, embodied in a proposed consent decree, that would require Lexington to bring its sanitary and storm sewer systems into compliance with the Clean Water Act at an estimated cost, according to the United States, of $250 million to $300 million. The proposed consent decree also would require Lexington to complete two Supplemental Environmental Projects (estimated to cost $1.23 million) and two Commonwealth environmental projects (estimated to cost $1.50 million) and to pay the United States a $425,000 civil penalty. The parties assert that they negotiated the proposed consent decree in good faith. Although Lexington agreed to the entry of the proposed consent decree "without further notice," Lexington maintains that its agreement to the terms of the proposed consent decree is neither "an admission of liability" nor "an adjudication or admission of any fact or law."

The United States lodged the proposed consent decree with the district court on March 14, 2008. Pursuant to 28 C.F.R. § 50.7, the United States then published notice of the lodging of the consent decree in the Federal Register and solicited public comments on the proposed decree for a period of thirty days. Eighteen public comments were received; four comments remarked that the $425,000 civil penalty was too high and that the money could be better used to bring Lexington's sewer systems into compliance with the Clean Water Act. For example, one comment stated,

> [A]lthough punitive action against the city of Lexington is certainly warranted for allowing the situation to get out of hand, the $425,000 fine does seem excessive. A substantial reduction in this amount would enable us to use the funds collected to begin to address sooner a serious problem that has been neglected for far too long.[1]

---

[1] Another public comment stated:

> I believe the $425,000 fine is excessive and repressive. A fine from ten to one hundred dollars seems more fair. Property owners are going to bear the brunt of the increased fees; to further punish them for sins they did not commit seems unfair.

On July 25, 2008, the United States moved to enter the proposed consent decree as the judgment of the district court. In a memorandum in support of the motion to enter, the United States acknowledged and responded to public comments. In response to the four public comments concerning the amount of the civil penalty, the United States explained,

> It is customary to include substantial penalties for past non-compliance in consent decrees as an important component of enforcement and to operate as a deterrent to future non-compliance by the defendant and by others. It sends an important message to all municipal dischargers that non-compliance is far from free, and that expeditious efforts to improve [a] system are worth the cost.

The Citizens had yet to submit a response to the United States' motion to enter when the district court denied the motion and rejected the proposed consent decree on August 7, 2008. After noting that the "Clean Water Act requires that a civil penalty be imposed for violation thereof," the district court ruled: "The Court agrees with the commenters who were concerned that the [civil] penalties were too high and that the penalty money could be better applied to the work required under the Consent Decree." The district court added:

> Present day taxpayers and sewer services users should not be severely penalized for longstanding neglect on the part of the defendant. A large portion of the penalty money could be better utilized by additional [Supplemental Environmental Projects] or by application of a portion of the penalty money to remedial work required by the Consent Decree.

---

Wording could be added to provide for the fine to be reinstated if certain (well defined) goals are not met. There should be a provision for a 30-day to 90-day grace period if a project cannot be finished in time because of unforeseen circumstances.

A third public comment remarked that the district court should revise the decree and

[r]emove any punitive requirements, particularly the civil penalty of $425,000. This penalty is inconsistent with the stated objectives of fixing the problem and such penalties are ineffective when applied to municipal/government entities with civil servant employees who have not maliciously failed to perform their duty. Save this for corporate or private penalties. This takes money away from the stated objective, fixing the water and storm system in Lexington.

The fourth public comment regarding the civil penalty suggested that the district court should "[a]djust the penalty so that the money Lexington pays can actually be put into the sewer project."

On August 21, 2008, the United States moved the district court to reconsider its decision to reject the decree. The district court denied the United States' motion for reconsideration, and the United States now appeals. Lexington takes no position on the merits of this appeal.

The only stated basis for the conclusion that the proposed penalty was too high was that the money would be better used by Lexington for remediation of "longstanding" violations. While this may be so, such a consideration conflicts with the determination of Congress that civil penalties are appropriate in the case of Clean Water Act violations. Rejecting a civil penalty as too high because of the greater seriousness of the violation, or because the penalty money could be used for remediation, is in tension with, rather than in accordance with, the statutory purpose behind civil penalties. In most Clean Water Act cases, the more serious the violation, the more that penalty money could be used for remediation. If Congress thought a violator's money would be better spent that way, Congress would hardly have provided for civil penalties.

When Congress enacted the Clean Water Act, the stated objective was "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Civil penalties play an important part in achieving this goal because they "deter future violations" of the Clean Water Act. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Indeed, the Clean Water Act's legislative history indicates that Congress intended a district court imposing a civil penalty after trial "'to consider the need for retribution and deterrence, in addition to restitution.'" *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 422-23 (1987)). The language of the Clean Water Act provides more specific guidance by requiring a district court imposing a civil penalty after trial to "consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d). Although a district court need not necessarily consider each of these factors when considering a proposed consent decree, *see United States v.*

*Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992), these factors nonetheless show the role that civil penalties are meant to play in achieving the goal of the Clean Water Act.

The stated basis for rejecting the civil penalty as too high was therefore statutorily problematic. Our conclusion in this regard finds further support in the Clean Water Act provision that "[a]ny person who violates" one or more of a number of sections of the Clean Water Act "or any permit condition or limitation implementing any of such sections . . . shall be subject to a civil penalty." 33 U.S.C. § 1319(d). Several courts of appeals have read this language to require that a civil penalty must be imposed in every case in which a court has found a Clean Water Act violation. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990); *Stoddard v. W. Carolina Reg'l Sewer Auth.*, 784 F.2d 1200, 1208 (4th Cir. 1986); *cf. United States v. Winchester Mun. Utils.*, 944 F.2d 301, 306 (6th Cir. 1991) (per curiam) (concluding that United States was "substantially justified" in taking position that a civil penalty was mandatory).[2]

It may be that the district court in the present case determined for independent reasons that the civil penalty was too high, and merely added as a comment that the money could be better used for remediation. Our remand today should not be interpreted as holding that rejection of a penalty must always be accompanied by an express, detailed justification. It may be that a district court record, without extensive elaboration in a court opinion, demonstrates that a proposed penalty is too high. In the present case, however, the record, in light of the relevant considerations to be applied by the district court in this context, does not provide an obvious basis for concluding that the penalty

---

[2]The issue in *Winchester* was "whether the district court [had] abused its discretion in ordering the United States to pay substantial attorney fees to a municipal utility found to have been violating" the Clean Water Act. *Winchester*, 944 F.2d at 302. We held that the United States' pursuit of a civil penalty was a "substantially justified" position that precluded an award of attorney fees under the Equal Access to Justice Act, *id.* at 306, notwithstanding that the United States had argued that civil penalties were mandatory pursuant to 33 U.S.C. § 1319(d), *see Winchester*, 944 F.2d at 305. We cited the Fourth Circuit's decision in *Stoddard* as support for this position, but noted in dictum, "It is true that a number of district courts have stated that whether to impose a civil penalty is discretionary. We ourselves are inclined to believe that these district courts have interpreted § 1319(d) correctly . . . ." *Id.* at 306.

was too high. Where such a basis is absent, and where there is express reliance on a consideration that is not fully consistent with congressional policy, remand is appropriate.

The criteria to be applied when a district court decides whether to approve and enter a proposed consent decree, are whether the decree is "'fair, adequate, and reasonable, as well as consistent with the public interest.'" *United States v. County of Muskegon*, 298 F.3d 569, 580-81 (6th Cir. 2002) (quoting *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986)). In *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991), we characterized "the standard of fairness, reasonableness and consistency with the statute" as "our court's general test for consent decrees." For the reasons that follow, application of these criteria to the record before us does not facially warrant rejection of the civil penalty without further explanation by the district court.

First, it is not obvious from the record that the proposed civil penalty is unfair. This court has deemed a number of considerations, including "the strength of plaintiff[s'] case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved," to be relevant when determining whether a decree is fair. *Id.* at 1435 (citations omitted) (internal quotation marks omitted).

Although it is difficult to assess the strength of the United States' case at this juncture, the complaint alleged five claims for relief, each of which alleged numerous violations of the relevant permit and/or the Clean Water Act over time. Lexington has not admitted liability as to any of these claims. Thus if this case were to proceed to trial, there is a real risk that after the facts are fully developed, the result would be a civil penalty that is significantly higher than the penalty provided for by the parties in the proposed consent decree. Indeed, the Clean Water Act authorizes civil penalties in excess of $20,000 "per day for each violation." 33 U.S.C. § 1319(d). The United States asserts that, in light of the "alleged multiple daily violations over a five-year period, Lexington's potential maximum civil penalty" following trial would be "in the tens of

millions of dollars." Additionally, the United States and Lexington assert that they negotiated the proposed consent decree in good faith, and nothing before us appears to indicate otherwise. The United States' good faith is further evidenced by its "manifested willingness . . . to thoroughly consider all oral and written comments made with regard to the proposed decree." *Akzo Coatings*, 949 F.2d at 1435.

Because there is a risk that, after the facts are fully developed at trial, a higher civil penalty may become more clearly warranted, and because the United States and Lexington negotiated the proposed consent decree in apparent good faith, fairness appears to weigh in favor of approving the proposed consent decree.

Second, reasonableness also appears to weigh in favor of approving the decree. One of the most important considerations when evaluating whether a proposed consent decree is reasonable is "the decree's likely effectiveness as a vehicle for cleansing" the environment. *Id.* at 1437. The United States asserts that the proposed consent decree, on the whole, will be an effective vehicle for cleansing the environment because it will bring Lexington into compliance with the Clean Water Act. The United States further asserts that the civil penalty, in particular, will "boost[] the consent decree's effectiveness as a tool for cleansing the environment" because the civil penalty will have a deterrent effect and will therefore prevent future violations, both by Lexington and by others. There is no apparent reason to discredit these assertions.

The United States also suggests that the civil penalty provided for here is reasonable when compared to civil penalties provided for in other consent decrees that district courts in this part of the country have approved and entered to resolve enforcement actions against municipalities for similar alleged Clean Water Act violations. In response, the Citizens correctly note that "comparison of consent decrees is a risky business," and they point to a number of factors that may undermine the value of such a comparison. But the Citizens do not show that the proposed penalty is *high* compared to consent judgments in comparable situations, and the numbers relied upon in the United States' brief at least suggest that such a showing would be difficult to make.

Third, with regard to whether the proposed consent decree is consistent with the public interest, the district court arguably took the public interest into account when concluding that "[p]resent day taxpayers and sewer services users should not be severely penalized for longstanding neglect on the part of" Lexington. But such a consideration suggests that penalties should be lower when violations are more egregious. This would conflict with the very idea of imposing civil penalties, contrary to the congressional intent described above. In evaluating the public interest, the district court must consider whether the decree is "consistent with the public objectives sought to be attained by Congress." *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983) (citation omitted).

The United States argues on appeal that the civil penalty provided for in the proposed consent decree is consistent with the goal of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a). The United States observes that Lexington's alleged Clean Water Act violations were serious and suggests that "[s]ubstantial penalties are warranted to deter future serious violations." The United States also argues that Lexington realized a substantial economic benefit as a result of the alleged Clean Water Act violations because, rather than spending revenues to update and maintain the sanitary and storm sewer systems, Lexington spent those revenues in other ways. The United States further argues that Lexington has a history of Clean Water Act violations; that there is no contention that Lexington made a good faith effort to comply with the Clean Water Act such that the civil penalty the parties have agreed to should be reduced; and that Lexington, in negotiating the terms of the proposed consent decree, has already considered and accepted the economic impact the civil penalty will have on Lexington, its taxpayers, and the sewer system users.

Although the district court, in rejecting the proposed consent decree, noted Lexington's "longstanding neglect" of the sanitary and storm sewer systems, it is not clear how such a consideration makes a penalty too high. On the surface, in contrast, the civil penalty appears to "be consistent with the public objectives sought to be attained by Congress." *Williams*, 720 F.2d at 923 (citation omitted).

Finally, public policy generally supports "a presumption in favor of voluntary settlement" of litigation. *Akzo Coatings*, 949 F.2d at 1436. Indeed, the "presumption is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA[,] which enjoys substantial expertise in the environmental field." *Akzo Coatings*, 949 F.2d at 1436 (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).

All of these considerations preclude us from upholding the district court's refusal to approve the civil penalty on the ground stated below. The reason given is in tension with congressional policy, and the record does not otherwise support the conclusion without further explanation. We accordingly remand the case to the district court. On remand, the district court may approve the consent decree, or explain more fully, consistent with this opinion, the exercise of its discretion in declining to approve the consent decree.

---

**CONCURRING WITH THE LEAD OPINION'S ANALYSIS**

---

RONALD LEE GILMAN, Circuit Judge, concurring.   I fully concur with the lead opinion's analysis.  I write separately only to note that I would remand this case with specific instructions to enter the proposed consent decree.

The civil penalty in this case represents a tiny fraction of the proposed consent decree's overall cost.  Specifically, the $425,000 civil penalty is less than two-tenths of one percent of the $250 million estimated minimum cost of remediation.  And this calculation uses the low end of the predicted cost range of between $250 and $300 million.  Given this, and the majority's thorough explanation as to why the amount of the civil penalty is appropriate under the applicable law, a remand with instructions to enter the proposed consent decree is fully justified.  *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 352 (6th Cir. 1986) (reversing and remanding to the district court "with instructions to enter the agreed judgment order"); *United States v. North Carolina*, 180 F.3d 574, 583 (4th Cir. 1999) (reversing and remanding to the district court "with instructions to enter the consent decree"); *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1356 (9th Cir. 1990) (same).

By not issuing such a remand, the lead opinion implies that the district court could properly create some new rationale for rejecting the civil penalty that we would uphold on appeal.  I believe, on the other hand, that there is no valid basis to reject the amount of the civil penalty and, as such, would give instructions to simply enter the proposed consent decree.